IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RODNEY BURNS, | : | |
|     Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| PA DEPARTMENT | : | |
| OF CORRECTIONS, et al, | : | No. 05-3462 |
|     Defendants. | : | |

<u>MEMORANDUM AND ORDER</u>

**Schiller, J.**                                                                                                              February 6, 2007

Plaintiff Rodney Burns brings this 28 U.S.C. § 1983 civil rights action against Pennsylvania Department of Corrections ("DOC") officials Donald Williamson, David DiGuglielmo, Thomas Dohman, Mary Canino, Robert S. Bitner, Tony Wolfe, Levi Hosband, and Frank Regan ("Defendants"). Plaintiff asserts due process and retaliation claims arising out of his prison disciplinary proceedings. Presently before the Court are Defendants' motion for summary judgment and Plaintiff's motion for partial summary judgment. For the reasons that follow, Defendants' motion is granted, Plaintiff's motion is denied, and summary judgment is entered for Defendants on all claims.

**I.**     **BACKGROUND**

In February 2005, Plaintiff was incarcerated in Housing Unit B ("B Block") at SCI Graterford, a Pennsylvania prison.[1] (Mem. of Law in Supp. of Defs.' Mot. for Summ. J. [hereinafter

---

[1] The following facts are undisputed. However, in considering Defendants' motion for summary judgment, the Court views these facts in the light most favorable to Plaintiff. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *see also Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986).

Defs.' Mem.] at 2.)  On February 10, 2005, an inmate named Charles Mobley was assaulted by another inmate, who threw scalding hot water on his face.  (Mem. of Law in Supp. of Pl.'s Partial Mot. for Summ. J. [hereinafter Pl.'s Mem.] at 1.)  The attack occurred in the B Block "dayroom" area.  (Defs.' Mem. at 3.)  Mobley's burns were first discovered four days later by Corrections Officer Angelina Rivera, who then notified her superiors.  (Pl.'s Mem. at 1.)  After Mobley was taken to the prison medical unit for treatment, he identified inmate Ricky Holmes as his assailant.  (*Id*. at 2.)  Holmes was placed under administrative custody with restricted cell status for four days while the incident was investigated.  (*Id*.)

On February 18, 2005, the same day Holmes was released from restricted cell status, Plaintiff was escorted to the security unit and interrogated by Defendant Thomas Dohman, the Captain of Security at SCI Graterford, as part of the investigation.  (*Id*.)  Dohman accused Plaintiff of committing the assault and told him that the assault had been recorded on videotape.  (*Id*.)  Plaintiff repeatedly denied any involvement in the incident.  (*Id*. at 3.)  Nonetheless, following the meeting with Dohman, Plaintiff was placed in administrative custody and transferred to the Restricted Housing Unit ("RHU").  (*Id*.)

Dohman issued a misconduct report on March 7, 2005, charging Plaintiff with assault.  (*Id*.)  The report stated that the charges were based on statements from two confidential informants who saw the assault and had given reliable information in the past.  (*Id*.)  Plaintiff filed timely requests for Mobley to appear as a witness at his disciplinary hearing and for disclosure of the videotape of the incident.  (*Id*.)  On March 10, 2005, Plaintiff appeared before Defendant Hearing Officer Mary Canino for his disciplinary hearing and plead not guilty.  (*Id*. at 4.)  Plaintiff also renewed his requests to view the videotape of the incident and for Canino to view the tape as well.  (*Id*.)  As a

result of these requests, Canino continued the hearing. (*Id.*)

On March 15, 2005, Canino held an *in camera* hearing regarding Plaintiff's disciplinary charges, during which she heard testimony from Dohman summarizing the statements of the two confidential informants. (*Id.*) During the hearing, Dohman did not identify the confidential informants, nor did Canino ever obtain written statements from them. (*Id.* at 4-5.) Dohman also informed Canino that the incident was not recorded on videotape. (*Id.* at 5.) Canino also met with Mobley, who refused to testify at Plaintiff's disciplinary hearing. (Defs.' Mem. at 13.) She did not obtain a written statement from Mobley, and did not ask him why he refused to testify at Plaintiff's disciplinary hearing or at an *in camera* hearing. (Pl.'s Mem. at 6.) Later that day, Canino reconvened Plaintiff's disciplinary hearing and informed him that: (1) Mobley had refused to testify; (2) she found the confidential informants' statements, as described by Dohman, to be credible and reliable; and (3) the incident was not recorded on videotape. (*Id.* at 5.)

Canino found Plaintiff guilty of the assault and imposed the following sanctions: (1) 180 days of disciplinary confinement in the RHU; (2) loss of his prison job; and (3) assessment of his inmate account for any medical or other expenses incurred by Mobley as a result of the assault. (*Id.* at 6.) To date, Plaintiff has not paid any expenses for Mobley's medical treatment. (Defs.' Mem. at 15 n.8; Joint App. Ex. 1 (Burns Dep.) at 11.) Plaintiff timely appealed his disciplinary conviction to the Program Review Committee, Defendant Superintendent David Diguglielmo, and Chief Hearing Examiner Robert Bitner. (Pl.'s Mem. at 6-7.) All three administrative levels upheld the conviction after reviewing the same record, which included Canino's hearing report, Dohman's misconduct report, Plaintiff's inmate statement, and his witness request form. (*Id.*)

A separation order was entered between Plaintiff and Mobley on April 4, 2005, as a result

of Plaintiff's disciplinary conviction, to eliminate the possibility that he would retaliate against Mobley upon release from disciplinary custody. (*Id*. at 7-8.) On September 6, 2005, Plaintiff was transferred to SCI Huntingdon; the transfer was justified solely by Plaintiff's disciplinary conviction. (*Id*. at 8.) As a result of his transfer, Plaintiff must now pay long-distance calling rates to talk to his family on the telephone and, to this point, has incurred $132.50 in calling card expenses. (*Id*.) In addition, Plaintiff has lost over $1,000 in wages because of losing his prison job in the SCI Graterford Clothing Plant and being placed in the "general labor" pool. (*Id*. at 9.)

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party bears the initial burden of identifying those portions of the record that it believes illustrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the moving party makes such a demonstration, then the burden shifts to the nonmovant, who must offer evidence that establishes a genuine issue of material fact that should proceed to trial. *Id.* at 324; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). "Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." *Williams v. Borough of West Chester*, 891 F.2d 458, 460-61 (3d Cir. 1989).

When evaluating a motion brought under Rule 56(c), a court must view the evidence in the light most favorable to the nonmovant and draw all reasonable inferences in the nonmovant's favor.

*Anderson*, 477 U.S. at 255; *see also Pollock*, 794 F.2d at 864.  A court must, however, avoid making credibility determinations or weighing the evidence in ruling on summary judgment.  *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000); *see also Goodman v. Pa. Tpk. Comm'n*, 293 F.3d 655, 665 (3d Cir. 2002).

### III.  DISCUSSION

#### A.  Plaintiff's Due Process Claims Fail As a Matter Law Because Plaintiff Was Not Deprived of Property

Plaintiff asserts both substantive and procedural due process claims against Defendants for their acts and omissions during his prison disciplinary process, including: (1) denying him the right to call Mobley as a witness; (2) failing to disclose potentially exculpatory evidence, namely the videotape and Mobley's identification of another inmate as the assailant; (3) denying him the right to present documentary evidence; (4) failing to insure the credibility and reliability of the confidential informants; (5) failing to investigate on appeal the procedures utilized during his hearing; and (6) imposing an arbitrary and constitutionally impermissible disciplinary decision. (*See* Second Am. Compl. ¶¶ 74-87.)  Plaintiff also challenges the constitutionality of the DOC policy governing misconduct hearings, DC-ADM 801, which grants the hearing examiner unbounded discretion to exclude witnesses.  (*Id.* ¶ 75.)

The Fourteenth Amendment guarantees that no state shall "deprive any person of life, liberty, or property, without due process of law."  U.S. CONST. amend. XIV, § 1.  To establish a valid due process claim a plaintiff must show: "(1) the existence of a protected life, liberty or property interest; (2) a deprivation of that protected interest; and (3) state action effecting the deprivation of the

protected interest." *Jones v. Clark*, 607 F. Supp. 251, 254 (E.D. Pa. 1984) (*citing Parratt v. Taylor*, 451 U.S. 527, 536-37 (1981)).  Neither party suggests that a protected liberty interest is at stake here. (Defs.' Mem. at 24-25, 25 n.14; Pl.'s Resp. to Defs.' Mot. for Summ. J. [hereinafter Pl.'s Resp.] at 5-6.)  None of the actions taken by Defendants – temporarily placing Plaintiff in disciplinary confinement, transferring Plaintiff to SCI Huntingdon, removing Plaintiff from his prison job, increasing Plaintiff's custody level – implicated a protected liberty interest.  *See Griffin v. Vaughn*, 112 F.3d 703, 708 (3d Cir. 1997) (fifteen months in RHU at SCI Graterford does not implicate liberty interest); *Debrose v. Chesney*, Civ. A. No. 95-6813, 1996 WL 4093, at *3 (E.D. Pa. Jan. 2, 1996) (no liberty interest in remaining in one place of incarceration as opposed to another); *Wright v. O'Hara*, Civ. A. No. 00-1557, 2002 WL 1870479, at *5 (E.D. Pa. Aug. 14, 2002) (no liberty or property interest in prison job); *Wilson v. Horn*, 971 F. Supp. 943, 947 (E.D. Pa. 1997) (no constitutional right to particular custody level).

Instead, Plaintiff premises his due process claims on a protected property interest – his inmate account.  (Pl.'s Resp. at 6.)  The Third Circuit has stated that "[i]nmates have a property interest in funds held in prison accounts.  Thus, inmates are entitled to due process with respect to any deprivation of money."  *Higgins v. Beyer*, 293 F.3d 683, 693 (3d Cir. 2002) (*quoting Reynolds v. Wagner*, 128 F.3d 166, 179 (3d Cir. 1997)).  Although Plaintiff identifies a protected property interest, his due process claims fail because he cannot show a deprivation of that interest.  Plaintiff appears to assert that Defendants deprived him of his protected interest by "assessing" his inmate account for the purpose of covering Mobley's medical expenses.  As the court noted in *Higgins*, however, "the alleged violation of [the plaintiff's] Fourteenth Amendment right to due process occurred *at the moment he was deprived of his property interest* without notice and a predeprivation

hearing (i.e. *when [the defendants] seized the money in his inmate account*)." *Id*. at 694 n. 3 (emphasis added).

Although Canino's disciplinary hearing report included the notation "assess inmate's account for medical and other expenses," no money was ever seized or deducted from Plaintiff's inmate account. (Joint App. Ex. 24 (Canino hearing report) & Ex. 1 at 11 ("Q. Did you ever pay any money towards Mr. Mogley's [sic] medical expenses?  A.  No, they haven't garnished anything from my inmate account.")  But absent the seizing, or at least freezing of even minimal funds in an inmate's account, no deprivation has occurred to trigger due process protection. *See Higgins*, 293 F.3d at 694, 694 n.3; *Parke v. Guarini*, Civ. A. No. 95-4341, 1997 WL 129015, at *2 (E.D. Pa. Mar. 19, 1997) ("[Prisoner-plaintiff] is entitled to some procedural protection before [money in his inmate account] can be 'taken.'"); *Jones*, 607 F. Supp. at 254 (prisoner-plaintiff had protected property interest in $6.40 taken out of his inmate account); *see also Smith v. Queen*, Civ. A. No. 91-36012, 1992 WL 123854, at *2 (9th Cir. 1992) (due process required where prison partially froze inmate's account).

Because Plaintiff has suffered no deprivation of property, he fails as a matter of law to state a due process violation, and accordingly, the Court grants Defendants' motion for summary judgment on Plaintiff's due process claims.[2]

---

[2] Should Defendants or other DOC officials seize any funds from Plaintiff's inmate account for the payment of medical or other expenses resulting from Mobley's assault, this Court would grant Plaintiff leave to re-file his due process challenges to his disciplinary process. Although the due process protections guaranteed to persons in prison are diminished, the Court has serious concerns that Defendants' actions would not satisfy even those minimal due process requirements.

### B. Plaintiff's Retaliation Claim Fails As a Matter of Law Because Plaintiff Did Not Exercise His Constitutional Privilege Against Self-Incrimination

Plaintiff also asserts a retaliation claim against Defendants, alleging that the adverse disciplinary actions were taken in retaliation for Plaintiff's exercise of his constitutional privilege against self-incrimination. (*See* Second Am. Compl. ¶¶ 88-91.)

To establish a retaliation claim under the Fourteenth Amendment, a plaintiff must show that: (1) his conduct leading to the alleged retaliation was constitutionally protected; (2) he suffered some adverse action by the defendants; and (3) a causal link exists between the adverse action and the exercise of his constitutional rights. *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001). Plaintiff bases his retaliation claim on his constitutional privilege against self-incrimination. Defendants correctly assert that Plaintiff never exercised such right. (*See* Defs.' Mem. at 34.)

A retaliation claim is predicated on the *exercise* of a constitutional right or privilege, because the exercise of that right must motivate the resulting adverse action. *See Rauser*, 241 F.3d at 333. The Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. CONST. amend. V; *see also Malloy v. Hogan*, 378 U.S. 1, 6 (1964) (extending protection to state action under Fourteenth Amendment). The constitutional privilege against self-incrimination is properly exercised or invoked only when a person refuses to answer a question on the ground that his answer would be incriminating to himself. *See, e.g.*, *United States v. Weiner*, 96 F.3d 35, 39 (2d Cir. 1996) (privilege protects right to remain silent); *United States v. Rodriguez*, 14 F.3d 1040, 1049 (5th Cir. 1994) (same); *MaGahee v. Massey*, 667 F.2d 1357, 1362 (11th Cir. 1982) (The Fifth Amendment protects the "constitutional right to remain silent," but "the right is not self-executing.").

Here, Plaintiff never refused to answer any question asked by Defendants. He never admitted to assaulting Mobley and continued to defend himself and assert his innocence when questioned throughout his disciplinary process. (Pl.'s Mem. at 3; *see also* Joint App. Ex. 22 (Pl.'s inmate statement), Ex. 25 (Pl.'s appeal to Program Review Committee), Ex. 27 (Pl.'s appeal to Superintendent) & Ex. 29 (Pl.'s appeal to Chief Hearing Examiner).) Therefore, Plaintiff's conduct was not constitutionally protected because he never exercised his privilege against self-incrimination. As Plaintiff's retaliation claim fails as a matter of law, the Court grants Defendants' motion for summary judgment on this claim as well.

**IV.   CONCLUSION**

For the foregoing reasons, the Court grants Defendants' motion for summary judgment with respect to all of Plaintiff's claims.[3] An appropriate Order follows.

---

[3] Plaintiff also names Defendants Confidential Informants #1 and #2 in his Second Amended Complaint. The Court grants summary judgment with respect to these Defendants as well.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RODNEY BURNS, | : | |
|     Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| PA DEPARTMENT | : | |
| OF CORRECTIONS, et al, | : | No. 05-3462 |
|     Defendants. | : | |

## ORDER

AND NOW, this **6th** day of **February**, **2007**, upon consideration of Defendants' Motion for Summary Judgment, Plaintiff's Motion for Partial Summary Judgment, the responses thereto, and for the foregoing reasons, it is hereby **ORDERED** that:

1. Defendants' motion for summary judgment (Document No. 59) is **GRANTED**.

2. Plaintiff's motion for partial summary judgment (Document No. 62) is **DENIED**.

3. The Clerk of Court is directed to close this case.

BY THE COURT:

**Berle M. Schiller, J.**